**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| MICHAEL ALLEN,<br>*Petitioner-Appellant*, | No. 18-35001 |
| v. | D.C. No.<br>3:17-cv-00044-HZ |
| RICHARD IVES,<br>*Respondent-Appellee.* | ORDER |

Filed September 22, 2020

Before: William A. Fletcher, Consuelo M. Callahan, and Morgan Christen, Circuit Judges.

Order;
Concurrence by Judge W. Fletcher;
Dissent by Judge R. Nelson

# SUMMARY[*]

## Habeas Corpus

The panel denied a petition for rehearing en banc and denied on behalf of the court a petition for rehearing en banc.

Concurring in the denial of rehearing en banc, Judge W. Fletcher, joined by Judge Christen, wrote to respond to the dissent from rehearing en banc and to explain why the panel majority reached the correct decision in this habeas case in which the only question was whether Allen was making a claim of actual innocence. Judge W. Fletcher explained that Allen's claim of being "actually innocent" of his mandatory sentencing enhancement due to a retroactive change in law meets the definition of "actual innocence" under *Bousley*; and rather than deepening the existing circuit split, instead aligns the Ninth Circuit with the Fourth, Sixth, and Seventh Circuits. Responding to Judge R. Nelson's argument that the decision is contrary to *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012), Judge W. Fletcher wrote that the claims are different in that Allen's claim relied on retroactively applicable Supreme Court case law while the claim in *Marrero* was based on a non-retroactive interpretation of the Sentencing Guidelines.

Dissenting, Judge R. Nelson—joined by Judges Callahan, M. Smith, Ikuta, Bennett, Bade, Collins, Lee, Bress, Bumatay, VanDyke, and (as to Parts II and IV) Hunsaker—wrote that the panel majority's holding conflicts with Supreme Court precedent in *Bousley v. United States*,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

523 U.S. 614 (1998); deepens a four-way circuit split; creates an irreconcilable intra-circuit conflict with the holding in *Marrero*; and ignores the statutory text by evading the limits of the Antiterrorism and Effective Death Penalty Act of 1996.

## COUNSEL

Elizabeth G. Daily (argued), Assistant Federal Public Defender, Federal Public Defender's Office, Portland, Oregon, for Petitioner-Appellant.

Amy Potter (argued) and Natalie K. Wight, Assistant United States Attorneys; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney, District of Oregon; United States Attorney's Office, Portland, Oregon; for Respondent-Appellee.

## ORDER

Judge W. Fletcher and Judge Christen have voted to deny Respondent-Appellee's petition for rehearing en banc, filed June 8, 2020 (Dkt. Entry 54). Judge Callahan has voted to grant the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(f).

The petition for rehearing en banc is **DENIED**.

W. FLETCHER, Circuit Judge, with whom CHRISTEN, Circuit Judge, joins, concurring in the denial of the Petition for Rehearing En Banc:

Our colleague called this case en banc, but the call failed to gain the approval of a majority of the active judges on our court. We write to respond to our colleague and to explain why we believe we reached the correct decision.

The question presented in this case was fairly straightforward. Petitioner Allen sought a writ of habeas corpus under 28 U.S.C. § 2241. In *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012), we held that relief may be sought under § 2241 if a petitioner "(1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim." (internal quotation marks omitted). The government did not contest that Allen "ha[d] not had an unobstructed procedural shot" at presenting his claim. The only question was whether Allen was "mak[ing] a claim of actual innocence."

*Marrero* recognized that a habeas petitioner in a capital case could be "actually innocent" of his capital sentence, but left open the question whether a petitioner could be actually innocent of a non-capital sentence for purposes of § 2241. *Id.* at 1193. In *Allen*, we answered the question left open in *Marrero*. We held that Allen made a cognizable claim of actual innocence of his non-capital sentence and that he properly sought relief under § 2241. *See Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020).

Our dissenting colleague argues that our decision in *Allen* is contrary to *Marrero*, but the two cases are quite different. As we explained in our opinion, Allen's claim relied on

retroactively applicable Supreme Court case law. The claim at issue in *Marrero*, by contrast, was based on a non-retroactive interpretation of the Sentencing Guidelines.

Allen pleaded guilty in federal district court to three drug and firearm-related crimes in 1997. His minimum sentence under the then-mandatory Sentencing Guidelines was increased based on the district court's finding that he had two prior state-law convictions for "controlled substance offenses" that were predicate crimes under the Guidelines. If Allen had previously been convicted of only one "controlled substance offence," and thus only one predicate crime, his mandatory minimum Guideline sentence would have been lower. At sentencing, the district judge stated that if the mandatory minimum sentence had not been increased by the two prior convictions for predicate crimes he would have sentenced Allen to a substantially shorter term.

One of Allen's two prior state-law convictions was based on a guilty plea for a marijuana offense under Conn. Gen. Stat. § 21a-277(a). Some of the conduct prohibited under § 21a-277(a) was a "controlled substance offense" within the meaning of the Guidelines, but some of the conduct was not. The federal district court believed that § 21a-277(a) was divisible, and that its overbreadth could therefore be ignored for purposes of determining whether it was a "controlled substance offense." The court concluded that the marijuana conviction under § 21a-277(a) was for a controlled substance offense, and thus for a predicate crime.

After the deadline for filing a motion pursuant to 28 U.S.C. § 2255 had passed, the Supreme Court decided *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016). Those retroactively

applicable decisions clarified the divisibility analysis. Under *Descamps* and *Mathis*, it is very likely that § 21a-277(a) was indivisible rather than divisible. If § 21a-277(a) was indivisible, Allen's marijuana conviction under that statute was not a conviction for a "controlled substance offense."

Under *Alleyne v. United States*, 570 U.S. 99, 107–08 (2013), a fact that increases a mandatory minimum sentence is an "element of the offense." If an element of an offense is not established, a defendant is necessarily innocent of that offense. *See Bousley v. United States*, 523 U.S. 614 (1998); *United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017), *abrogated on other grounds by Ward v. United States*, 936 F.3d 914 (9th Cir. 2019) ("[A]ny 'fact increasing either end of [a sentencing] range produces a new penalty and constitutes an ingredient of the offense.'" (second alteration in original) (quoting *Alleyne*, 570 U.S. at 112)); *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013) ("For a prisoner serving a sentence imposed when the guidelines were mandatory, a § 2241 habeas petition raising a guidelines error 'tests the legality of his detention' within the meaning of the savings clause, § 2255(e), because the guidelines had the force and effect of law; the only lawful sentence was a guidelines sentence."). If Allen is right that his conviction under § 21a-277(a) was not for a "controlled substance offense," and thus was not a conviction for a predicate crime, he is "actually innocent" of the increased mandatory element of his sentence and is eligible for habeas relief under § 2241.

Our dissenting colleague does not disagree with our holding that a habeas petitioner can be "actually innocent" of a non-capital sentence for purposes of § 2241. He argues only that, on the facts of this case, Allen is not actually innocent of his sentence.

Our colleague makes essentially four arguments. First, he argues that we have misapplied the Supreme Court's decision in *Bousley*. Second, he argues that Allen should have applied for habeas under 28 U.S.C. § 2255 rather than § 2241. Third, he argues that our decision conflicts with decisions in all of the other circuits except the D.C. Circuit. Finally, he argues that our decision opened the proverbial floodgates. We take each argument in turn.

## I. *Bousley*

Our colleague's most important argument is that we have misapplied *Bousley*, the foundation case explaining the meaning of "actual innocence" under § 2241. He writes, "The panel majority disregarded the Supreme Court's holding in *Bousley* that '"actual innocence" means factual innocence, not mere legal insufficiency.' 523 U.S. at 623–24." Diss. Op. at 20. Our colleague argues that actual innocence of a predicate crime, and resulting innocence of a mandatory element of a sentence, is a "mere legal insufficiency" rather than "actual innocence." He misunderstands *Bousley*.

Habeas petitioner Bousley pleaded guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). Bousley did not challenge his conviction on direct appeal, and he allowed the one-year limitation period under § 2255 to lapse. Five years after his conviction, in *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court clarified, with retroactive effect, the definition of "using." Based on the Court's decision in *Bailey*, Bousley sought habeas under § 2241 on the ground that he had not understood the meaning of "using" when he entered his plea. The Court allowed Bousley to seek habeas under § 2241, provided he could demonstrate "actual innocence." We have previously applied *Bousley* to grant

relief in *Alaimalo v. United States*, 645 F.3d 1042, 1047–48 (9th Cir. 2011) (holding that a § 2241 petitioner had a claim of actual innocence under *Bousley* when a later en banc decision narrowed the interpretation of "importation" so as not to reach petitioner's conduct), and *United States v. Avery*, 719 F.3d 1080, 1085 (9th Cir. 2013) (holding that a § 2255 petitioner had a claim of actual innocence under *Bousley* when a later Supreme Court decision narrowed the definition of "honest services" so as not to reach petitioner's conduct).

The Court wrote in *Bousley*, "It is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. "Mere legal insufficiency," as used by the Court, meant insufficiency of the evidence of Bousley's guilt in the existing record. That is, Bousley could not demonstrate his "actual innocence" simply by pointing to the "mere legal insufficiency" of the evidence in the record made in connection with his guilty plea. Rather, Bousley had to show, on an open record, that he was actually innocent. The Court wrote, "[O]n remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy . . . ." *Id.* at 624.

Allen did not allege "mere legal insufficiency" in the sense used in *Bousley*. The issue was not the legal insufficiency of the evidence to support Allen's guilt in the state-law marijuana case under § 21a-277(a). He did not contest his guilt in that case. The issue, rather, was whether in that case Allen had been convicted of a "controlled substance offense" within the meaning of the then-mandatory Guidelines. In *Descamps* and *Mathis* the Supreme Court retroactively clarified the divisibility analysis for criminal statutes. Allen contended that under the law as clarified by

the Court in *Descamps* and *Mathis*, the Connecticut marijuana statute under which he was convicted was indivisible, and that his conviction was therefore not a conviction for a "controlled substance offense" according to the then-mandatory Guidelines. Under *Bousley*, this is a claim of actual innocence of the mandatory increase in his federal sentence.

Allen was in a very different position from Bousley. He did not claim "actual innocence" of his sentence because of a "legal insufficiency" of the evidence in the record. He claimed "actual innocence" because a predicate for his mandatory increased sentence—the existence of a prior conviction of a predicate crime—was missing. To impose the mandatory increased sentence under the Guidelines, the district court had to find as a fact that Allen had previously been convicted of two predicate crimes. To determine whether the Connecticut marijuana conviction was a predicate crime, there is no need for the federal habeas court to look beyond the existing record. That court need only look at the definition of the crime under § 21a-277(a) and to apply the analysis set forth in *Taylor v. United States*, 495 U.S. 575 (1990). There is no additional evidence the Government can offer on the point.

Our dissenting colleague contends that so long as Allen was previously convicted of *some* crime, it does not matter under *Bousley* what the crime was. Our colleague writes, "Allen's claim here has nothing to do with whether his prior conduct is still criminal, unlike in *Bousley*. . . . He remains rightly convicted of his past crimes." Diss. Op. at 22. But the question under the mandatory sentencing Guidelines was not whether Allen had been convicted of *some* crime. The question was whether he had been convicted of a *predicate*

crime. Under the logic of our dissenting colleague, it would not matter if the district court had used as a predicate crime a prior conviction for jaywalking, so long as the petitioner had been "rightly convicted of his past crime" of jaywalking.

Bousley claimed innocence of the crime of conviction, and Allen claimed actual innocence of the increased mandatory sentence. But for purposes of "actual innocence" under *Bousley*, the difference does not matter. Our colleague does not contend that there is no such thing as actual innocence of an increased mandatory sentence. A fact that increases a mandatory sentence is an "element of the offense." *Alleyne*, 570 U.S. at 108. A legal analysis is necessary to determine whether a conviction for marijuana possession—or for jaywalking—was a predicate offense for purposes of a mandatory sentence under the Sentencing Guidelines in effect at the time Allen was sentenced. But the legal analysis leads to a determination of a fact: Allen's conviction under § 21a-277(a) either was, or was not, a conviction for a predicate offense. If it was not a conviction for a predicate offense, Allen is "actually innocent" of his increased mandatory sentence.

## II. Petition Should Have Been Brought Under § 2255

Our dissenting colleague argues that Allen had an opportunity to assert his claim of actual innocence in an application under § 2255. He writes:

> Allen's first § 2255 motion in the Connecticut district court was denied in 2003. . . . He had an opportunity to bring the instant claim that he was not a career offender in that initial § 2255 motion but did not do so. As a result,

> he may not proceed by way of the escape
> hatch now.

Diss. Op. at 40 (citation omitted).  That is, according to our colleague, Allen had an "unobstructed procedural shot" at presenting his claim of actual innocence in an application under § 2255.  Therefore, he cannot now seek habeas under § 2241.

This argument ignores two things.  First, Allen is in the same position as Bousley.  When Bousley was convicted, "using" a firearm had an accepted definition.  Only after the Supreme Court clarified the definition of "using" five years later in *Bailey* did Bousley have a claim of actual innocence.  That is, because of the incorrect definition of "using" previously relied upon by the parties and the court, Bousley had not had an "unobstructed procedural shot" at presenting his claim of actual innocence under the correct definition.  Similarly, when Allen was sentenced, § 21a-277(a) was believed to be severable under the accepted mode of analysis.  Under that analysis, an overbreadth argument was not available.   Only after the Supreme Court clarified the severability analysis in *Descamps* and *Mathis* several years later did Allen have an argument that § 21a-277(a) was inseverable and a resulting claim of actual innocence.  That is, because of the incorrect severability analysis previously relied upon by the parties and the federal district court in Connecticut, Allen had not had an "unobstructed procedural shot" at presenting his claim of actual innocence under the correct analysis.  In *Bousley*, where a later Supreme Court decision clarified the law, the Court allowed a habeas claim under § 2241.  We did the same in *Allen*.

Second, the Government conceded the point. The Government did not argue that Allen had an unobstructed procedural shot at bringing his actual innocence claim in an application under § 2255. It conceded that if Allen had a plausible claim of actual innocence of the increase in his mandatory sentence he could seek habeas under § 2241.

### III.  Other Circuits

Our dissenting colleague argues that our decision conflicts with the decision of every other circuit except the D.C. Circuit, "creat[ing] a new four-way circuit split and maroon[ing] the Ninth Circuit on our own island of § 2255(e) jurisdiction." Diss. Op. at 24. Our colleague overstates the matter.

Decisions by the Fifth, Eleventh and, possibly, the Tenth Circuits conflict with our decision in *Allen*. *See In re Bradford*, 660 F.3d 226 (5th Cir. 2011); *McCarthan v. Director of Goodwill Industries—Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc); *see also Sandlain v. English*, 714 F. App'x 827 (10th Cir. 2017). However, decisions by the Fourth, Sixth and Seventh Circuits agree with *Allen*, though using somewhat different language. *See Lester v. Flournoy*, 909 F.3d 708, 712 (4th Cir. 2018) (allowing a § 2241 habeas challenge to a mandatory sentence when "misclassification as a career offender, which increased his mandatory Guidelines range from a maximum of 151 months to a minimum of 262, is an 'error sufficiently grave to be deemed a fundamental defect.'" (quoting *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1318 (2019)); *Hill v. Masters*, 836 F.3d 591, 600 (6th Cir. 2016) (allowing a § 2241 habeas challenge to a mandatory sentence "because [petitioner] was sentenced

under the mandatory Guidelines Manual; is barred from filing a successive § 2255 petition; and received the enhancement based on a prior conviction that a subsequent, retroactive change in Supreme Court jurisprudence [in *Descamps*] reveals is not a predicate offense."); *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) (allowing a § 2241 habeas challenge to a mandatory sentence after *Begay v. United States*, 553 U.S. 137 (2008), clarified the definition of generic arson, with the result that what had been thought a predicate crime was no longer a predicate crime for career offender status). The other circuits have not decided any cases directly on point.

We agree with our dissenting colleague's argument that there is a circuit split. We also agree with our dissenting colleague's implicit argument that the Supreme Court should grant certiorari—in this or in some other case—to resolve the circuit split. We disagree, however, with our colleague's argument that we are "marooned . . . on our own island." We are in the distinguished company of the Fourth, Sixth and Seventh Circuits.

## IV.  Floodgates

Finally, our dissenting colleague argues that our decision in *Allen* "throws wide open an escape hatch reserved for the rarest of occasions," and "opens the floodgates to habeas review of noncapital 'actual innocence' claims." Diss. Op. at 16, 23. We disagree. Our decision reaches only a small and diminishing subset of § 2241 petitions. For other petitioners to be similarly situated to Allen and to be actually innocent of a mandatory sentence, they will have to show: (1) they were convicted of prior offenses, at least one of which was mistakenly deemed to qualify as a predicate offense; (2)

the mistake was later addressed by the Supreme Court in a retroactive decision clarifying the applicable law; (3) they received a mandatory sentence under a mandatory sentencing scheme; and (4) all of this came to light after the opportunity to raise it in a § 2255 motion had passed. *See Hill*, 836 F.3d at 599–600 (explaining that the Sixth Circuit's holding only applies to petitioners who received mandatory minimum sentences pre-*Booker*, were unable to file a successive § 2255 petition, and who relied on Supreme Court authority that retroactively disqualified a prior conviction from serving as a predicate offense). Allen's actual innocence claim was cognizable under § 2241 because he was sentenced before the Court decided *Booker*, which rendered the Sentencing Guidelines advisory rather than mandatory. *Booker* was decided more than fifteen years ago. The number of remaining actual innocence claims under the pre-*Booker* mandatory sentencing scheme, comparable to Allen's, is small and dwindling.

---

R. NELSON, Circuit Judge, with whom CALLAHAN, M. SMITH, IKUTA, BENNETT, BADE, COLLINS, LEE, BRESS, BUMATAY, and VANDYKE, Circuit Judges, join, and with whom HUNSAKER, Circuit Judge, joins as to Parts II and IV, dissenting from the denial of rehearing en banc:

This case has all the hallmarks worthy of en banc review. The panel majority held that a challenge to a conviction based on a subsequent change in legal classification of a crime qualifies as a claim of "actual innocence" for purposes of 28 U.S.C. § 2255(e). The panel majority's holding conflicts with Supreme Court precedent in *Bousley v. United States*, 523 U.S. 614 (1998); deepens a four-way circuit split; creates

an irreconcilable intra-circuit conflict with our holding in *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012); and ignores the statutory text by evading the limits of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Not only has every other circuit rejected the panel majority's reasoning, but 24 judges on this court—including 19 active judges—have interpreted *Marrero* to preclude the panel majority's holding. *See infra* at 27 n.15. Yet today we allow just two judges to overrule 19 active judges without en banc review. The panel majority's opinion and the court's denial of en banc review disregards the rule of law generally and AEDPA specifically.

The panel majority becomes the first panel to decide that a petitioner legally misclassified as a career offender under the Sentencing Guidelines has a claim of actual innocence—ignoring Supreme Court precedent in *Bousley* holding "'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. at 623–24 (citation omitted). We now become the lone outlier among all of our sister circuits on a question of exceptional importance. Even our concurring colleagues agree that this case warrants Supreme Court review. Concurrence at 13. Furthermore, we directly contradict our precedent in *Marrero*, where we held that "the purely legal argument that a petitioner was wrongly classified as a career offender under the Sentencing Guidelines is not cognizable as a claim of actual innocence under the escape hatch." 682 F.3d at 1195. The panel majority's holding also ignores AEDPA's statutory text. All told, we now add the panel majority's fundamental legal

error to the long list of errors we have made in habeas jurisprudence.[1]

The panel majority throws wide open an escape hatch reserved for the rarest of occasions. By reading any legal insufficiency as actual innocence, the panel majority invites a massive influx of previously meritless habeas petitions. Instead, we should "apply[] the law as Congress wrote it . . . ." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1080 (11th Cir. 2017). That means that "[t]o invoke the savings clause, there must be something about the initial § 2255 procedure that *itself* is inadequate or ineffective for *testing* a challenge to detention." *Prost v. Anderson*, 636 F.3d 578, 589 (10th Cir. 2011) (Gorsuch, J.). Ultimately, the panel majority fails in its charge "to apply, not amend, the work of the People's representatives." *Henson v.*

---

[1] *See, e.g.*, *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016) (per curiam) ("The Ninth Circuit's contrary reasoning is unpersuasive and inconsistent with this Court's precedents."); *Davis v. Ayala*, 576 U.S. 257, 258 (2015) ("The Ninth Circuit misunderstood the role of a federal court in a habeas case."); *Waddington v. Sarausad*, 555 U.S. 179, 194 (2009) ("The reasoning of the Court of Appeals, which failed to review the state courts' resolution of this question through the deferential lens of AEDPA, does not convince us . . . ."); *Evans v. Chavis*, 546 U.S. 189, 200 (2006) ("[W]e find the Ninth Circuit's reasoning in conflict with our *Saffold* holding."); *Mayle v. Felix*, 545 U.S. 644, 662 (2005) (noting the "Ninth Circuit's rule would permit the 'relation back' doctrine to swallow AEDPA's statute of limitation") (internal quotation marks and citation omitted); *Brown v. Payton*, 544 U.S. 133, 147 (2005) (holding the Ninth Circuit "made this . . . assumption, and it was in error to do so"); *Woodford v. Garceau*, 538 U.S. 202, 205–06 (2003) ("Five Courts of Appeals have ruled that AEDPA applies . . . while the Court of Appeals for the Ninth Circuit has held it does not . . . . [W]e agree with the majority of the Courts of Appeals.") (internal quotation marks and citation omitted); *Early v. Packer*, 537 U.S. 3, 10 (2002) (per curiam) ("[T]he Ninth Circuit erred by relying on those nonconstitutional decisions.").

*Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017)*.* Accordingly, I respectfully dissent.

## I

A brief background. A federal prisoner who seeks to challenge his confinement must generally rely on a § 2255 motion to do so. *See Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006). Section 2255 has a "1-year period of limitation[.]" § 2255(f). Section 2255 also restricts second or successive petitions to claims involving either newly discovered evidence that can clearly and convincingly establish innocence or new rules of constitutional law made retroactive by the Supreme Court. *See* § 2255(h). But the so-called "escape hatch" or "savings clause" of § 2255(e) allows a federal prisoner to file a § 2241 petition if the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." § 2255(e). In the Ninth Circuit, a § 2255 remedy is "inadequate or ineffective" when the petitioner "(1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim." *Stephens*, 464 F.3d at 898 (internal quotation marks omitted). Allen's claim centers on the definition of "actual innocence."

In this case, Petitioner Michael Allen pled guilty in 1997 to multiple drug and firearm offenses. *Allen*, 950 F.3d at 1186. Allen's base offense level was 36. *Id.* The district court applied a one-level upward adjustment because Allen was a "career offender" under U.S. Sentencing Guideline § 4B1.1, due to two prior state court convictions for drug offenses. *Id.* This adjustment increased the applicable guideline range from 235 months to 262 months on the low end, and from 293 months to 327 months on the high end. *Id.* The district court sentenced Allen to 262 months on the

conspiracy count, a mandatory consecutive sentence of 60 months on the carrying-a-firearm count, and a concurrent sentence of 120 months on the felon-in-possession count, for a total term of imprisonment of 322 months. *Id.* At the time of sentencing, the Sentencing Guidelines were mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). Allen's direct appeal was denied by the Second Circuit. *United States v. Perry*, 1998 WL 961120 (2d Cir. 1998). He then filed a § 2255 motion in the U.S. District Court for the District of Connecticut, which was denied. *Allen*, 950 F.3d at 1187. The Second Circuit affirmed. *Id.*

Allen filed the instant § 2241 petition in the U.S. District Court for the District of Oregon in 2017, where he had been incarcerated.[2] *Id.* Importantly, "Allen does not claim to be actually innocent of the crimes for which he was sentenced. Nor does Allen claim to be actually innocent of his prior convictions that, at the time of his sentencing, qualified him as a career offender under the Sentencing Guidelines." *Allen*,

---

[2] On April 26, 2019, Allen's sentence was reduced to time served and he was released under the First Step Act. *Allen*, 950 F.3d at 1187. The term of supervised release was reduced to 48 months. *United States v. Allen*, 384 F. Supp. 3d 238, 244 (D. Conn. 2019). The panel majority and dissent agree that this case has not been mooted by Allen's release from prison. *Allen*, 950 F.3d at 1187–89, 1192 n.1. Because the career offender enhancement potentially impacts the terms of Allen's supervised release, the case presents a live case and controversy. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in . . . 'custody' . . . within the meaning of the habeas corpus statute . . . ."); *see also Mujahid v. Daniels*, 413 F.3d 991, 995 (9th Cir. 2005) ("The 'possibility' that the sentencing court would use its discretion to reduce a term of supervised release . . . was enough to prevent the petition from being moot.").

950 F.3d at 1192 (Callahan, J., dissenting).  It's undisputed that he committed the two prior drug dealing offenses. *Allen*, 950 F.3d at 1188 ("Allen does not challenge the validity of his conviction for sales of marijuana . . . .").

Rather, Allen claims he was "actually innocent" of being classified as a career offender. *Id.* at 1186.  He argues that *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *Descamps v. United States*, 570 U.S. 254 (2013), retroactively established that one of his two state law drug offenses did not qualify as a federal predicate crime under the Sentencing Guidelines, when applying the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990). *Id.* at 1187.  Allen asserts that because one of his past crimes should be legally reclassified, he would not meet the sentencing standard for being a career offender. *Id.*  The district court dismissed the § 2241 petition for lack of jurisdiction, relying on our opinion in *Marrero*. *Id.*  The district court did not reach the merits of Allen's claim, but it granted a certificate of appealability "as to whether 28 U.S.C. § 2241 habeas corpus jurisdiction is appropriate." *Id.*

The panel majority held that Allen "made a claim of actual innocence that permits jurisdiction over his § 2241 petition," meeting the stringent requirement under the § 2255(e) escape hatch. *Id.* at 1189.  It reasoned that Allen's claim of innocence was factual in nature because the legal classification of his crimes was a "factual predicate" underlying his designation as a career offender. *Id.*  Thus, it held that he could be "actually innocent of a noncapital sentence for the purpose of qualifying for the escape hatch" due to the retroactive change in *Mathis* and *Descamps*. *Id.*  Judge Callahan dissented, stating that a claim of innocence based on misclassification as a career offender is "purely

legal" and cannot support a claim of actual, factual innocence. *Id.* at 1192–96 (Callahan, J., dissenting).

## II

The panel majority disregarded the Supreme Court's holding in *Bousley* that "'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. at 623–24 (citation omitted). Instead, the panel majority decided that a petitioner may be "actually innocent" of being classified as a career offender, even when he indisputably committed the prior criminal acts. *Allen*, 950 F.3d at 1188–89. It reshapes Allen's claim of legal insufficiency, calling the legal classification of his crimes a "factual predicate" for his career offender status. *Id.* at 1189.

Actual, factual innocence is the touchstone here for Allen to qualify for the escape hatch under Ninth Circuit precedent. The standard for actual innocence is drawn from the Supreme Court's holding in *Bousley* and rests on whether the underlying conduct was criminal (not the legal classification of the crime). *See also Muth v. Fondren*, 676 F.3d 815, 822 (9th Cir. 2012) ("Thus, Petitioner was convicted of engaging in *conduct* that remains criminal, and he is not actually innocent.") (emphasis added). The petitioner in *Bousley* had pled guilty under 18 U.S.C. § 924(c)(1) to "using" a firearm. 523 U.S. at 616. He then filed for habeas relief under § 2241, claiming his guilty plea was unintelligent, and his habeas petition was construed as a motion under § 2255. *Id.* at 617–18. While that challenge was pending, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137, 144 (1995), which restrictively defined the term "using" in § 924(c)(1). *Id.* at 617. Bousley had not raised a challenge to the notion that "using" meant "possessing" during direct

review.  *Id.* at 622.  To raise this procedurally defaulted issue on collateral review, he had to demonstrate "cause and actual prejudice . . . or that he [was] actually innocent."  *Id.* (internal quotation marks and citations omitted).

For purposes of habeas relief, the Supreme Court held that "'actual innocence' means factual innocence, not mere legal insufficiency."  *Id.* at 623–24 (citation omitted).  To establish actual innocence, a petitioner had to show "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Id.* (internal quotation marks and citation omitted).  The Supreme Court remanded so Bousley could try to show on an open record that his conduct was not criminal—that he merely possessed a firearm, and did not "use" it.  *Id.* at 624.  This showing would make a cognizable claim of actual innocence and entitle his habeas petition to be considered on the merits.  *Id.*

This makes sense, and the same reasoning should apply to our actual innocence exception under the escape hatch. Habeas relief is not available where a defendant would win post-conviction relief based on a *legal* technicality, *see Sawyer v. Whitley*, 505 U.S. 333, 339 (1992), and the same must be true under § 2255(e).  Just like the *Bousley* petitioner, a petitioner invoking § 2255(e) cannot win or lose merely because the record contains no evidence of his guilt, due to his guilty plea.  523 U.S. at 624.  Instead, he must show on an open record that he, *in fact*, did not engage in the criminal conduct.  *Id.*  Until now, we have faithfully applied the Supreme Court's definition of the term "actual innocence." For example, in *Alaimalo v. United States*, the petitioner had a cognizable actual innocence claim when he was convicted for conduct which was later held to be legal.  645 F.3d 1042, 1047 (9th Cir. 2011).  Likewise, in *United States v. Avery*, the

petitioner qualified for the escape hatch after a Supreme Court decision clarified that his conduct *in fact* wasn't illegal under the convicting statute. 719 F.3d 1080, 1082–83 (9th Cir. 2013). These cases stand for the proposition that actual, factual innocence requires that the petitioner's conduct was not illegal (not just legally misclassified) under the convicting statute.

Allen's claim here has nothing to do with whether his prior conduct is still criminal, unlike in *Bousley*. Allen concedes that he committed the criminal conduct that supported his state law convictions. *Allen*, 950 F.3d at 1188. He never claims he was *factually* innocent under *Bousley* or our caselaw. Rather, Allen argues that his state court conviction—as a legal matter—is no longer a categorical match with the federal predicate crime. *Id.* at 1187. Thus, he essentially claims his conviction is legally insufficient for the career offender sentencing enhancement based on a superseding change in law. The change in law here—the Supreme Court's decisions in *Mathis* and *Descamps*—didn't make Allen's past conduct noncriminal. He remains rightly convicted of his past crimes.

But the panel majority turns the concept of actual, factual innocence on its head. The panel majority validates Allen's claim of actual innocence because the "retroactive change of law . . . transformed his Connecticut marijuana conviction from a predicate crime into a non-predicate crime." *Allen*, 950 F.3d at 1190. The panel majority recognizes that *Bousley* allowed the petitioner to establish actual innocence only by showing his conduct was not criminal under the convicting statute. *See id.* But the panel majority essentially reframes a purely legal classification as a "factual predicate,"

contradicting the Supreme Court's precedent in *Bousley* and our holding in *Marrero*. *See Allen*, 950 F.3d at 1189.

The panel majority's definition stretches the meaning of the word "factual" beyond any meaning in legal parlance. Whether Allen's prior crime is a predicate crime is purely a legal question—it would never be submitted to a jury for trial as a fact question. A "question of fact" means an "issue involving the resolution of a factual dispute and hence within the province of the jury in contrast to a question of law." *Question of fact*, *Black's Law Dictionary* 1246 (6th ed. 1990). But a "question of law" is an "issue which involves the application or interpretation of a law and hence within the province of the judge and not the jury." *Question of law*, *Black's Law Dictionary* 1246 (6th ed. 1990). The panel majority's rationale means that any change in how a crime is legally classified now qualifies as "factual innocence," despite the Supreme Court's direction to the contrary in *Bousley*.

The panel majority's application of actual innocence allows any petitioner to seek relief from career-offender sentencing enhancements based on retroactive changes; transforms what is a quintessential claim of "legal insufficiency" into a claim of "factual innocence;" and flouts the Supreme Court's general admonition that "'actual innocence' is a very narrow exception[.]" *Sawyer*, 505 U.S. at 341. Rather than affect a mere "small and diminishing subset," Concurrence at 13, the panel majority's opinion opens the floodgates to habeas review of noncapital "actual innocence" claims.

# III

Apparently the existing deep three-way circuit conflict on this issue was not enough. The panel majority's decision creates a new four-way circuit split and maroons the Ninth Circuit on our own island of § 2255(e) jurisdiction. It accomplishes this feat almost without comment and ignores a wealth of precedent on this issue, nearly all of which would compel dismissing Allen's petition for lack of jurisdiction. In one set of cases, the First,[3] Second,[4] Third,[5] Fifth,[6] and

---

[3] *Damon v. United States*, 732 F.3d 1, 6 (1st Cir. 2013) ("Because Damon contests only the categorization of his prior conviction as a crime of violence, he has not pleaded 'actual innocence' as defined in *Bousley*.").

[4] *Poindexter v. Nash*, 333 F.3d 372, 382 (2d Cir. 2003) (affirming dismissal of a § 2241 petition based on career offender misclassification because "whatever the merit of the contention that the Guidelines were misapplied in the treatment of Poindexter's three undisputed prior convictions, his claim that the three crimes should have been treated as one crime is not cognizable as a claim of actual innocence").

[5] *Okereke v. United States*, 307 F.3d 117, 120–21 (3d Cir. 2002) (holding that the petitioner could not qualify for the escape hatch where he brought an *Apprendi* challenge to his sentence and did not claim factual innocence of the underlying crime of conviction); *Scott v. Shartle*, 574 F. App'x 152, 155 (3d Cir. 2014) (applying *Okereke* to deny a challenge to the application of the career offender enhancement by way of a § 2241 petition).

[6] *In re Bradford*, 660 F.3d 226, 230 (5th Cir. 2011) (per curiam) ("[A] claim of actual innocence of a career offender enhancement is not a claim of actual innocence of the crime of conviction and, thus, not the type of claim that warrants review under § 2241.").

Eighth[7] Circuits would dismiss the petition by relying on the definition of "actual innocence" as laid out in *Bousley*.[8] On a second view, the Tenth[9] and Eleventh[10] Circuits do not incorporate an "actual innocence" exception in their § 2255(e) escape hatch jurisprudence. They would instead dismiss the petition as successive under § 2255 because there was an opportunity to raise the issue in the first petition, even if the issue was foreclosed by Supreme Court precedent at the time.

---

[7] *Sun Bear v. United States*, 644 F.3d 700, 705–06 (8th Cir. 2011) (en banc) (affirming denial of motion to vacate based on an allegedly unlawful career offender enhancement because there was no allegation "that the *conduct* for which petitioner had been convicted and sentenced" had not occurred).

[8] Our concurring colleagues accuse us of misunderstanding *Bousley*. Concurrence at 7. To the contrary, our understanding of *Bousley* is consistent with every circuit, including our decision in *Marrero*, that relies on the *Bousley* "actual innocence" standard.

[9] *Prost*, 636 F.3d at 584, 590 (Gorsuch, J.) (holding that a petitioner cannot use a § 2241 petition to challenge his sentence where he could have raised the same claim in his initial § 2255 motion, even if the claim was foreclosed at the time by binding circuit or Supreme Court precedent); *Sandlain v. English*, 714 F. App'x 827, 831 (10th Cir. 2017) (applying *Prost* to deny a challenge to the application of the career offender enhancement by way of a § 2241 petition).

[10] *McCarthan*, 851 F.3d at 1089 ("A prisoner has an adequate procedure to raise any claim attacking his sentence, even if that claim is foreclosed by circuit precedent.").

On the third side, that leaves the Fourth,[11] Sixth,[12] and Seventh[13] Circuits as the only circuits that could theoretically find jurisdiction for Allen's habeas claim, but under a completely different standard. Like the Tenth and Eleventh Circuits, they also do not incorporate an actual innocence exception to qualify for the escape hatch. *See Allen*, 950 F.3d at 1199 (Callahan, J., dissenting). Rather, they demand an "error sufficiently grave to be [] a fundamental defect" to allow a petition under the § 2255(e) savings clause. *See Lester*, 909 F.3d at 712 (citation omitted). This equitable consideration in their escape hatch jurisprudence requires significant disparities between the "but for" and "imposed" sentences to qualify for relief.[14] But even they would likely

---

[11] *Lester v. Flournoy*, 909 F.3d 708, 716 (4th Cir. 2018) ("Where, as here, an erroneous career offender designation raises a defendant's mandatory prison term from a maximum of 12 ½ years to a minimum of almost 22, the resulting sentence is fundamentally defective" and can give rise to jurisdiction under § 2241.).

[12] *Hill v. Masters*, 836 F.3d 591, 600 (6th Cir. 2016) ("Hill's challenge to his misapplied career-offender enhancement is properly brought under § 2241 because he was sentenced under the mandatory Guidelines Manual; is barred from filing a successive § 2255 motion; and received the enhancement based on a prior conviction that a subsequent, retroactive change in Supreme Court jurisprudence reveals is not a predicate offense.").

[13] *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013) ("[T]he misapplication of the sentencing guidelines, at least where (as here) the defendant was sentenced in the pre-*Booker* era, represents a fundamental defect that constitutes a miscarriage of justice corrigible in a § 2241 proceeding.").

[14] *See, e.g.*, *Lester*, 909 F.3d at 716 (misapplied sentencing enhancement adding almost ten years); *Hill*, 836 F.3d at 593 (misapplied sentencing enhancement adding up to an additional nine years); *Brown*,

not find jurisdiction in this case. Here, Allen only received a sentence 29 months above the top end of the range that would have applied absent the career offender enhancement. *Allen*, 950 F.3d at 1186–7. In conclusion, not a single circuit uses the erroneous definition of "actual innocence" that the panel majority adopts, and not a single court would likely find jurisdiction under § 2255(e).

## IV

The panel majority's decision also creates an intra-circuit conflict with our previously uniform case law expressly foreclosing Allen's claim that he is "actually innocent" of his career offender classification. In *Marrero*, we held that "the purely legal argument that a petitioner was wrongly classified as a career offender under the Sentencing Guidelines is not cognizable as a claim of actual innocence under the escape hatch." 682 F.3d at 1195.

Over the last eight years, all relevant decisions of this court have uniformly interpreted *Marrero* to preclude the panel majority's holding here.[15] For those counting, that

---

719 F.3d at 586 (misapplied sentencing enhancement adding between 33 to 98 months).

[15] *Marrero*, 682 F.3d at 1191 (Thomas, C.J.; Graber, J., Schroeder, J.); *Dorise v. Matevousian*, 692 F. App'x 864, 865 (9th Cir. 2017) (Thomas, C.J.; Murguia, J.; Mccalla, D.J.) ("Although presented as an actual innocence claim, Dorise's real argument is that he was incorrectly categorized as a career offender under U.S.S.G. § 4B1.1. As in *Marrero*, this claim is purely legal and has nothing to do with factual innocence." (internal quotation marks omitted)); *Rios-Vizcarra v. Wigen*, 669 F. App'x 886, 887 (9th Cir. 2016) (Kleinfeld, J.; Tashima, J.; M. Smith, J.) ("Rios-Vizcarra does not allege that he was factually innocent of the state conviction, nor was Rios-Vizcarra statutorily ineligible to receive his

means that prior to the en banc vote 15 judges on this court and one judge sitting by designation—including 10 active judges eligible to vote en banc—had already rejected the panel majority's holding in clear language in six separate cases and the *Allen* panel's dissent. True, the panel majority was not bound by the five unpublished decisions. But hopefully judges on those panels meant what they wrote. And if so, 19 active judges on this court have now rejected the panel majority's holding under *Marrero*.

I briefly review *Marrero*. The petitioner was convicted in 2001 of two counts of interference with interstate commerce by threat or violence and a firearm offense. *Marrero v. United States*, 2007 WL 914313, at *1 (N.D. Ill. Mar. 21, 2007). The district court classified Marrero as a career offender based on several prior convictions and sentenced him to 324 months of imprisonment. *Marrero*, 682 F.3d at 1192. Marrero's direct appeal was denied, as was his first § 2255 motion. *Id.*

---

sentence, either with or without the enhancement."); *United States v. Meeks*, 616 F. App'x 335, 336 (9th Cir. 2015) (Goodwin, J.; Gould, J.; Ikuta, J.) ("The district court did not err when it concluded that Meeks failed to satisfy the requirement of the § 2255(e) escape hatch because Meeks has not plausibly shown that he was actually innocent of the career offender sentencing enhancement under the Armed Career Criminal Act . . . ."); *Rith v. Rios*, 514 F. App'x 684, 685 (9th Cir. 2013) (Wallace, J.; McKeown, J.; Ikuta, J.) (noting petitioner's "argument that he was innocent of his career offender status for sentencing purposes is not cognizable as a claim of actual innocence" (internal quotation marks omitted)); *Green v. Thomas*, 485 F. App'x 888, 889 (9th Cir. 2012) (Rawlinson, J.; Murguia, J.; Watford, J.) ("[Petitioner] contends that he is actually innocent of being a career offender under U.S.S.G. § 4B1.1 and therefore he should be allowed to proceed with his section 2241 petition under the 'escape hatch' of 28 U.S.C. § 2255(e). This contention is foreclosed [by *Marrero*].").

Marrero then filed a § 2241 petition in 2008 making two separate claims of actual innocence. *Id.* First, Marrero "may have intended to raise the claim that he was factually innocent of his crimes of conviction. But he introduced no evidence tending to show that he did not commit the robberies underlying his convictions," dooming his first claim of factual innocence. *Id.* Second, he also argued that "two of his prior offenses should no longer be considered 'related'" due to the 2007 amendments to the Sentencing Guidelines. *Id.* at 1193. Therefore, he claimed he was "actually innocent" of being a career offender because he would be one prior conviction short of the requirement. *Id.*

We held that "[w]hatever the merits of Petitioner's argument that he would not qualify as a career offender . . . his claim [was] not one of actual innocence." *Id.* We relied on the Supreme Court's holding in *Bousley* that "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 1193 (citing *Bousley*, 523 U.S. at 623). Marrero had presented a "purely legal claim that ha[d] nothing to do with factual innocence." *Id.* Therefore, we affirmed the district court's dismissal of the petition for lack of jurisdiction, holding that "the purely legal argument that a petitioner was wrongly classified as a career offender under the Sentencing Guidelines is not cognizable as a claim of actual innocence under the escape hatch." *Id.* at 1195.

To distinguish *Marrero*, the panel majority claims it was merely answering a question left open—"whether a petitioner may ever be actually innocent of a noncapital sentence for the purpose of qualifying for the escape hatch." *Allen*, 950 F.3d at 1189. But regardless of the broad hypothetical left open in *Marrero*, the *Marrero* panel clearly answered the narrow question at issue in Allen's case: the argument that "a

petitioner was wrongly classified as a career offender under the Sentencing Guidelines" is "purely legal" and therefore "is not cognizable as a claim of actual innocence under the escape hatch." 682 F.3d at 1195. The panel majority's invocation of the question left open in *Marrero* is a thinly-veiled attempt to evade its holding.

There are situations where *Marrero*'s hypothetical question of actual innocence might be presented—but not in Allen's case. A petitioner may actually be innocent if he were factually innocent of the crimes: "for example, if the predicate crime were rape, and DNA evidence later proved petitioner's innocence." *Allen*, 950 F.3d at 1188. But the panel majority acknowledges that Allen committed two prior crimes of drug dealing and that this conduct was criminal. *Id.* The panel majority's own formulation clarifies the issue: "[t]he question before us . . . is not whether a petitioner who did not commit a predicate crime of which he was convicted may challenge his career offender status under § 2241." *Id.* The question here is a separate one: "whether a petitioner who committed a crime that is not a predicate crime may challenge his career offender status under § 2241." *Id.* Until now, the answer to that question was a unanimous and resounding no. Allen was not actually, factually innocent of his underlying conviction.

The panel's circuitous approach to avoiding *Marrero* is unavailing because *Marrero*'s open question simply doesn't apply here. There is no actual innocence in this case; rather, both Marrero and Allen presented claims of legal insufficiency. Marrero (1) argued he was actually innocent, (2) of the career offender sentencing enhancement, (3) via a § 2241 petition filed through the § 2255(e) escape hatch provision, (4) because the state law predicate offenses that the

district court relied on at sentencing, (5) are no longer sufficient federal predicate offenses, (6) under the revised Sentencing Guidelines. 682 F.3d at 1192–93. Compare Marrero's claim to Allen's. Allen (1) argues he is actually innocent, (2) of the career offender sentencing enhancement, (3) via a § 2241 petition filed through the § 2255(e) escape hatch provision, (4) because the state law predicate offense that the district court relied on at sentencing, (5) is no longer a sufficient federal predicate offense, (6) due to an intervening change in the Supreme Court's non-constitutional caselaw. *Allen*, 950 F.3d at 1189–90. In short, *Marrero* is on all fours with this case.

To justify dismembering *Marrero*, the panel majority turns to a single out-of-circuit case, *United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994), decided before Congress passed AEDPA. *Allen*, 950 F.3d at 1189. Although *Maybeck*'s holding facially supports the panel majority's opinion, *Maybeck* is distinguishable. First, *Maybeck* involved a motion brought under § 2255, not a § 2241 petition. 23 F.3d at 891. Thus, the Fourth Circuit was not presented with the precise question presented here: whether a § 2255 motion was "inadequate or ineffective." Second, Maybeck was factually and actually innocent of the crime reported in his presentence report. Maybeck's presentence report said he was convicted of "armed burglary." *Id.* at 890. This caused him to be sentenced as a career offender. *Id.* at 890–91. But Maybeck, in fact, did not have a weapon during this burglary. *Id.* at 891, 892 n.7. Maybeck's actual innocence claim was based on the *facts* of his prior state conviction, which did not involve the use of a weapon. The panel majority's misplaced reliance on this single Fourth Circuit case ignores a wealth of

precedent adopting the concept of actual, factual innocence from *Bousley* and *Marrero*.[16]

Separately, the panel majority suggests it was not required to follow *Marrero* because that case involved a non-retroactive change in the law, whereas the change here was retroactive. *Allen*, 950 F.3d at 1190. But this distinction again ignores our past decisions, suggesting many of my colleagues have gotten the law wrong in unpublished decisions applying *Marrero*. *See supra* at 27 n.15. By way of example, a few years ago, we rejected a claim that a petitioner was "'actually innocent' of his career offender status" under the Guidelines by virtue of the Supreme Court's "retroactive[]" invalidation of "the residual clause of the Armed Career Criminal Act as unconstitutionally vague." We held "[a]s in *Marrero*, th[at] claim [was] purely legal and ha[d] nothing to do with factual innocence." *Dorise*, 692 F. App'x at 865 (internal quotation marks and citation omitted).[17]

More importantly, *Marrero* rejected the argument that the retroactivity of a legal change in the law had any bearing on "actual innocence." 682 F.3d at 1193. To the contrary, *Marrero* recognized that the merits of the petitioner's

---

[16] *See, e.g.*, *Damon*, 732 F.3d at 6; *Poindexter*, 333 F.3d at 382; *Okereke*, 307 F.3d at 120–21; *In re Bradford*, 660 F.3d at 230; *Sun Bear*, 644 F.3d at 705–06.

[17] *See also Wigen*, 669 F. App'x at 887 (applying *Marrero* to reject habeas petition based on the argument that "a prior state court conviction should not be construed as a 'prior drug felony'" after the Supreme Court's decision in *Descamps*); *Meeks*, 616 F. App'x at 336 (applying *Marrero* to reject claim of actual innocence of the "career offender sentencing enhancement" based on retroactive application of *Descamps*).

argument that the law had changed as a legal matter were irrelevant because "his claim [was] not one of actual innocence." *Id.* Retroactivity, therefore, is not a basis for distinguishing Allen's case from *Marrero*.

The panel majority also grasps at dicta from *Marrero* to try to bolster its reasoning. It cites language from *Marrero* briefly summarizing other circuit cases' exceptions to the general rule that a petitioner cannot be actually innocent of a noncapital sentence under the escape hatch. *See Allen*, 950 F.3d at 1189; *see also Marrero*, 682 F.3d at 1194. In particular, it focuses on the second exception, where "a petitioner may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible," *Marrero*, 682 F.3d at 1195. *See Allen*, 950 F.3d at 1189. But the panel majority "admits . . . this exception [is] limited . . . to claims that the petitioner received a sentence that exceeded the statutory maximum." *Allen*, 950 F.3d at 1195 (Callahan, J., dissenting). Here, if Allen "had not been designated a career offender, his applicable Guideline range on the conspiracy count would have been 235 to 293 months—meaning, he would have still been eligible for the 262-month sentence he received." *Id.* at 1195 n.4. This exception, at odds with our jurisprudence as applied, could not even apply in Allen's case.

The panel majority justifies its leap of logic by contending that "the advisory nature of the post-Booker guidelines was important." *Allen*, 950 F.3d at 1189. The panel majority surmises that *Alleyne v. United States* might mean that for petitioners sentenced under the mandatory Sentencing Guidelines, like Allen, whenever the statutory minimum is increased an actual innocence claim might be available. *See Allen*, 950 F.3d at 1189 (citing *Alleyne*,

570 U.S. 99, 107–08 (2013)). So the panel majority uses Allen's increased minimum sentence under the mandatory Sentencing Guidelines as cursory justification for its holding. *Id*. But *Alleyne* said nothing about the meaning of an "actual innocence" claim or the § 2255 escape hatch. The panel majority's proposition lacks any legal support from *Marrero* or any other case.

This lone paragraph from the panel majority's opinion threatens to blow the habeas escape hatch wide open so that the "very narrow exception" of actual innocence now swallows the rule for finality. *See Sawyer*, 505 U.S. at 341. Any challenge to a sentencing factor that increased the petitioner's minimum sentence under the pre-*Booker* guidelines would qualify as an "actual innocence" claim for purposes of the escape hatch. Under the panel majority's reasoning, habeas relief would be open to essentially any garden-variety challenge to a court's pre-*Booker* sentencing range calculation. The actual innocence exception reserved for the "extraordinary case" would apply to every ordinary case. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

## V

Besides its misapplication of "actual innocence," the panel majority more fundamentally reads the escape hatch in conflict with the text, structural context, and history of the statute. While our court has already applied the escape hatch unmoored from the statutory text, the panel majority exacerbates this problem.

**A**

The text of the statute is instructive. *See Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 802 (9th Cir. 2017) ("[W]e start, as we must, with the text of the statute."). Section 2255(e) provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

(emphasis added). The operative clause contains three key terms: "remedy," "inadequate or ineffective," and "to test." I discuss each in turn.

First, Congress's decision to use the term "remedy" indicates that a § 2255 motion is not made inadequate or ineffective simply because a legal claim is foreclosed by operative case law when first filing a habeas petition. A remedy is the "*means* by which a right is enforced or the violation of a right is prevented, redressed, or compensated." *Remedy*, *Black's Law Dictionary* 1526 (3d ed. 1933) (emphasis added). "Means" is the key component of the definition. So long as the petitioner can file an initial § 2255 motion challenging his detention, he has the means to bring a challenge. The escape hatch remains shut. *See McCarthan*, 851 F.3d at 1086.

Congress's use of the term remedy, as opposed to relief, is critical. "Section 2255(e) expressly distinguishes between the terms remedy and relief, stating that § 2241 is not available to a petitioner simply because a 'court has denied him relief.'" *Prost*, 636 F.3d at 584–85 (internal citations omitted). Cases from our circuit and others build on this notion. For example, we have held that the inability to obtain relief because of a procedural bar does not mean that the § 2255 remedy is inadequate or ineffective. *See, e.g.*, *Moore v. Reno*, 185 F.3d 1054, 1055 (9th Cir. 1999); *see also Prost*, 636 F.3d at 585 (collecting cases). And even though precedent might be unfavorable to a claim, a petitioner still has the *opportunity* to challenge his conviction. "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (internal quotation marks and citation omitted). "The U.S. Reports are, after all, replete with instances where the Supreme Court has rewarded litigants who took the trouble to challenge adverse circuit precedent." *Prost*, 636 F.3d at 590.

Second, Congress's decision to include the phrase "inadequate or ineffective" in § 2255(e) also supports this conclusion. Inadequate, in the context of remedies, means "unfitted or not adapted to the end in view." *Inadequate Remedy at Law*, *Black's Law Dictionary* 940 (3d ed. 1933). "Ineffective" means "[o]f such a nature as not to produce . . . the intended [ ] effect." *Ineffective*, *5 Oxford English Dictionary* 239 (1st ed. 1933). Again, neither term guarantees substantive relief; the statutory text only protects the *opportunity* to bring a challenge. "If the rule were otherwise—if, say, courts were to read subsection (h) as barring only *losing* second or successive motions—the statute's limitations would be effectively pointless." *Prost*,

636 F.3d at 586.  A challenge is "still 'adapted to the end' of testing the claim regardless of the claim's success on the merits."  *McCarthan*, 851 F.3d at 1087.

Finally, Congress's use of the phrase "to test" buttresses the conclusion that § 2255(e) guarantees an opportunity, not a result.  "'To test' means 'to try.'"  *Id*. at 1086 (quoting *Test*, *11 Oxford English Dictionary* 220 (1st ed. 1933)).   A petitioner may try a claim if he has "an *opportunity* to bring his argument."  *Prost*, 636 F.3d at 584.  Congress's decision to use the word "test" confirms that § 2255(e)'s escape hatch is "concerned with process—ensuring the petitioner an opportunity to bring his argument—not with substance— guaranteeing nothing about what the opportunity promised will ultimately yield in terms of relief."  *Id.*

## B

Section 2255(e)'s statutory context also confirms that a petitioner's remedy under § 2255 is not inadequate or ineffective so long as the petitioner had the opportunity to raise that claim in his first § 2255 motion.   It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

The escape hatch's statutory neighbor, § 2255(h), supports a limited reading of § 2255(e).  This provision bars second and successive petitions unless there is:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h). Congress added this section in 1996, after federal courts permitted § 2255 motions based on new statutory interpretations. *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 346–47 (1974). Yet Congress did not include a provision in § 2255(h) providing jurisdiction if a conviction or sentence was potentially affected by a retroactive change in statutory interpretation. Congress intentionally chose not to do so. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent.").

Similarly, Congress's decision to impose a statute of limitations on § 2255 motions also should limit our interpretation of § 2255(e). Section 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

> (1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Again, Congress did not include an exception to the one-year statute of limitations for new statutory interpretations issued by the Supreme Court or circuit courts. We run roughshod over that statutory language by reading in an exception to the statute of limitations for claims brought under § 2255(e)'s escape hatch relying on new statutory interpretations.

Section 2255(e)'s statutory history also confirms that the escape hatch should be narrowly construed. When Congress created the cause of action in § 2255, it attempted to distribute habeas litigation to the convicting courts away from the few courts with jurisdiction over prisons. *See Hueso v. Barnhart*, 948 F.3d 324, 327 (6th Cir. 2020). The panel majority's expansive interpretation of the escape hatch, however, defeats this purpose. Broad access to the escape hatch dramatically increases, rather than reduces, the burden

of crushing workloads for district courts.  District courts with jurisdiction over prisons must hear all the § 2255 motions stemming from their own cases, while also considering the § 2241 petitions from prisoners sentenced in other jurisdictions filing for habeas relief through the § 2255(e) escape hatch.  In short, the panel majority's interpretation of the escape hatch exacerbates the problem Congress was attempting to solve.

\* \* \*

The panel majority veers so far afield because it fails to analyze § 2255(e)'s full text, structural context, or statutory history.  Applying the plain language of § 2255(e) would lead to a straightforward denial of Allen's petition.  Allen's first § 2255 motion in the Connecticut district court was denied in 2003.  *Allen*, 950 F.3d at 1187.  He had an opportunity to bring the instant claim that he was not a career offender in that initial § 2255 motion but did not do so.  As a result, he may not proceed by way of the escape hatch now.  Instead, his § 2241 petition should have been denied as a thinly-veiled second and successive motion over which we lack jurisdiction pursuant to § 2255(h).  Denial is also warranted because the petition is untimely under § 2255(f).

## VI

The panel majority's decision conflicts with Supreme Court precedent; every circuit's case law, including our own; and ignores the statutory language and context of § 2255.  In doing so, it wrests jurisdictional control over "the power to award the writ" of habeas corpus from Congress.  *See Ex parte Bollman*, 8 U.S. 75, 94 (Marshall, C.J.).  Chief Justice Marshall rejected the expropriation of this power to the

judiciary 213 years ago.  *Id.*  We should have taken this case en banc and followed his lead.  I respectfully dissent.